UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TIME WARNER CABLE OF NEW YORK CITY,
a division of Time Warner Entertainment Company, L.P.,            02 Civ.        ( )

                       Plaintiff,

    -against-                                                                            **COMPLAINT**

EDDIE LEE,

                       Defendant.
------------------------------------------------------------X

*[Stamps: CV 02 1809 ORIGINAL; FILED IN CLERK'S OFFICE U.S. DISTRICT COURT, E.D.N.Y. ★ MAR 2 2 2002 BROOKLYN OFFICE; GARAUFIS, J.; POHORELSKY, M.J.]*

The plaintiff, Time Warner Cable Of New York City, a division of Time Warner Entertainment Company, L.P. (hereinafter referred to as "TWCNYC" or plaintiff), by its attorneys, Lefkowitz, Louis & Sullivan, L.L.P., as and for its Complaint herein, alleges the following:

### Summary of Claims

1. This action seeks declaratory and injunctive relief and monetary damages on account of the defendant's statutorily prohibited tampering with plaintiff's cable television system and unauthorized reception of plaintiff's private telecommunications signals through the use of a compatible bootleg "pirate" converter-decoder device or devices to descramble and receive plaintiff's scrambled telecommunications signals without its authorization. The defendant has been engaged in the unauthorized reception and interception of plaintiff's cable television programming services by use of an unauthorized, modified "pirate" cable television descrambling and decoding device or devices and equipment. The conduct alleged against the defendant is in direct violation of Federal civil statutes specifically designed to prohibit the unauthorized reception of cable television programming -- 47 U.S.C. §§ 605(a) and 553(a)(1).

## Jurisdiction and Venue

2. This action arises under 47 U.S.C. sections 605(a) and 553(a)(1).

3. This Court has original jurisdiction over this action under 28 U.S.C. section 1331. Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. section 1391(b), as plaintiff and the defendant reside in the Eastern District of New York.

## Parties

4. At all times hereinafter mentioned, Time Warner Cable of New York City, a division of Time Warner Entertainment Company, L.P., is a Delaware limited partnership with business offices at 25-20 Brooklyn-Queens Expressway, Woodside, New York 11377.

5. At all times hereinafter mentioned, defendant Eddie Lee is an individual having a principal residence at 114-43 209th Street, 1st Floor, Jamaica, New York 11411-1007.

## Factual Background

### The Cable Operator

6. Franchises have been duly awarded to TWCNYC pursuant to which it has the right to construct, operate and maintain cable television systems in parts of Kings, Queens and New York Counties, New York. TWCNYC offers cable television services to subscribers who request and pay for them.

7. TWCNYC's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Standard" tiers are packages of programming services that a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain "premium" programming services, such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service.

2

8. Additionally, TWCNYC offers pay per view programming, a service that enables TWCNYC subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee for cable television service.

9. Each subscriber is entitled to receive only that level of programming services that he or she selects and purchases.

10. The signals for nearly all of TWCNYC's cable television services are transmitted to TWCNYC's reception facilities from orbiting satellites and other means of over-the-air radio communication. TWCNYC thereafter retransmits these same signals to subscribers' homes and businesses through a network of cable wiring and equipment (the "System"). In order for subscribers to receive these transmitted cable television signals on their television sets, TWCNYC provides each subscriber with a device known as a "converter" which converts the multiple signals simultaneously transmitted over the System into different "channels," which can be viewed on subscribers' television sets.

11. To prevent subscribers from receiving programming services for which they have not paid, TWCNYC encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on the subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will be unviewable on the subscriber's television set.

12. TWCNYC's system is "addressable," which means that the converter-decoder TWCNYC provides to each subscriber is programmed by a central computer to authorize viewing of only programming services purchased by that subscriber. Each subscriber who

purchases services that are scrambled will have his or her decoder programmed by TWCNYC's central computer to receive only those services selected and purchased.

13. Encoding ("scrambling") is a primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

14. It is possible for a dishonest individual to install an unauthorized or "pirate" converter-decoder (one illegally programmed to descramble all of plaintiff's programming services without plaintiff's authorization) onto the plaintiff's cable television system or otherwise tamper with plaintiff's equipment in order to receive all of TWCNYC's scrambled programming without authorization and without making payment therefore.

15. Pay per view, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay per view programming is available throughout the day on a per event or movie basis. Premium services range in cost from approximately $7.00 to $13.00 per month per service. Hence, a "pirate" converter-decoder could conceivably steal hundreds of dollars worth of TWCNYC's premium and pay per view services each month.

16. Theft of cable service has a negative impact on the various political subdivisions within New York City, which derive franchise fees from a cable operator's gross revenues. The lost cash flow to cable operators adversely affects the ability of a cable operator to purchase and maintain a high quality of programming services for its subscribers. Cable piracy also creates an unfair subsidy to "freeloaders," which is paid for by honest, paying subscribers. Furthermore, the maintenance of unauthorized connections and use of pirate converter-decoders results in

signal "leakage," which violates FCC regulations and for which TWCNYC may suffer the imposition of substantial fines and other sanctions.

17. TWCNYC's signal is a private telecommunication not intended for public use.

### Defendant's Misconduct

18. Defendant Eddie Lee has been engaged in the ongoing unauthorized reception and interception of plaintiff's cable television programming services by his use of a "pirate" cable television descrambling and decoding device or devices and equipment purchased by the defendant from Teleview/Omega Holdings, L.L.C.-JRC Products, Inc. of Elgin, Illinois (hereinafter referred to as "Teleview/Omega").

19. Defendant Eddie Lee has purchased one or more "pirate" cable television descrambling and decoding devices and equipment from Teleview/Omega.

20. Defendant Eddie Lee has used the "pirate" converter-decoder and descrambling device or devices obtained from Teleview/Omega at his residence to receive and intercept TWCNYC's cable television programming services without TWCNYC's authorization.

21. The "pirate" converter-decoder(s) that the defendant obtained from Teleview/Omega and thereafter used was modified to circumvent the security functions of TWCNYC's scrambling technology and possess the illicit function of descrambling all scrambled "premium" and "pay-per-view" cable television programming services available on TWCNYC's System without payment to, or authorization from, TWCNYC.

22. At all times, the defendant engaged in the unauthorized reception of TWCNYC's programming services with intent and specific knowledge that his use of such a device or devices enable him to intercept and receive TWCNYC's cable television programming services without TWCNYC's authorization and without having made payment to TWCNYC for reception of

28.  TWCNYC has not authorized or consented to the use of "pirate" converter-decoders by the defendant, nor has TWCNYC authorized or consented to the rendering of assistance by the defendant in the reception or interception of TWCNYC's signals.

29.  TWCNYC is a "person aggrieved" by the defendant's violations of the Communications Act, and TWCNYC is authorized to institute this action against the defendant under 47 U.S.C. sections 605(e)(3)(A) and 553(c)(1).

30.  The violations of 47 U.S.C. sections 605(a) and 553(a)(1) committed by the defendant has injured and will continue to injure TWCNYC's ability to maximize its revenues by depriving it of the benefit of subscribers to its programming services and by injuring its goodwill and reputation. As a further result of such violations, the defendant has received and will continue to receive illegal and unjust gains by avoiding payment to TWCNYC for the reception of TWCNYC's premium, pay per view and other scrambled programming.

31.  Moreover, honest paying subscribers may have their services negatively affected as a result of the defendant's violations.

32.  Upon information and belief, unless restrained by this Court, the defendant will continue to violate 47 U.S.C. sections 605 and 553. The defendant has engaged in the unauthorized use of radio communications, conduct prohibited by 47 U.S.C. sections 605 and 553. Moreover, the defendant knew or should have known that the use of such unauthorized equipment was prohibited. Such violations of the Communications Act have caused and will continue to cause TWCNYC irreparable harm. TWCNYC cannot practicably determine the amount of lost revenues resulting from the defendant's unlawful conduct. In addition to diminishing TWCNYC's revenues, the defendant's unlawful conduct injures TWCNYC's reputation and goodwill, its ability to attract and finance the future acquisition of quality

services, and further impairs its ability to enhance its future growth and profitability. Furthermore, New York City loses franchise fees as a direct result of defendant's misconduct.

33. Plaintiff has no adequate remedy at law to redress the defendant's violations of 47 U.S.C. sections 605(a) and 553(a)(1).

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1) Declare that the defendant's unauthorized use of equipment designed to decode encrypted cable television signals:

(a) violated Title 47, U.S.C. sections 605(a) and 553(a)(1) and that such violations were committed willfully and for purposes of the defendant's direct or indirect commercial advantage or private financial gain;

(2) In accordance with Title 47, U.S.C. §§ 605(e)(3)(B)(i) and 553(c)(2)(A), enjoin the defendant, his agents, servants, employees, affiliated business entities, successors, assigns, and any entities or persons controlled directly or indirectly by him or acting on his behalf from the sale, modification and/or distribution of electronic equipment enabling the unauthorized interception of cable television programming services, from aiding and abetting or engaging in the interception, divulgence, reception or display of the cable television programming, service or signal of the plaintiff, whether transmitted by air or by cable, without the express authorization of the plaintiff, and from connecting, attaching, splicing into, tampering with or in any way using the plaintiff's system for the purpose of obtaining any of the programming services of the plaintiff without plaintiff's express authorization, and from manufacturing, purchasing, obtaining, utilizing, installing, or possessing any device or equipment capable of descrambling, intercepting, receiving, decoding or in any way making available the programming and services of the plaintiff without plaintiff's authorization; and,

(3)  In accordance with Title 47, U.S.C. §§ 605(e)(3)(B)(ii), 605(e)(3)(C) and 553(c)(2)(B), award the plaintiff:

(a) statutory damages in an amount of up to $110,000, assessed against the defendant, for each violation of Title 47, U.S.C. §§ 553(a)(1) and 605(a), involving the unauthorized reception and interception of plaintiff's cable television services, committed by the defendant; and,

(4)  In accordance with 47 U.S.C. §§ 553 and 605, direct defendant to pay plaintiff all of plaintiff's costs, investigative expenses and reasonable attorneys' fees; and,

(5)  Grant such other and further relief as is just.

Dated: Jericho, New York
   February 28, 2002

>                                       Respectfully submitted,
>
>                                       **LEFKOWITZ, LOUIS & SULLIVAN, L.L.P.**
>                                       Attorneys for Plaintiff
>
>                                       By: _[signature]_____
>                                       A Member of the Firm   DL1331
>                                       350 Jericho Turnpike, Suite 300
>                                       Jericho, New York 11753
>                                       (516) 942-4700